**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1  Mark C. Scarsi (SBN 183926)
   mscarsi@milbank.com
2  Miguel Ruiz (SBN 240387)
   mruiz@milbank.com
3  Ashlee N. Lin (SBN 275267)
   ashlee.lin@milbank.com
4  MILBANK, TWEED, HADLEY & McCLOY LLP
   601 South Figueroa Street, 30th Floor
5  Los Angeles, California 90017
   Telephone: (213) 892-4000
6  Facsimile: (213) 629-5063

7  Christopher J. Gaspar (*admitted Pro Hac Vice*)
   cgaspar@mibank.com
8  Andrew Lichtenberg (*admitted Pro Hac Vice*)
   alichtenberg@milbank.com
9  MILBANK, TWEED, HADLEY &MCCLOY LLP
   28 Liberty Street
10 New York, NY 10005
   Telephone: (212) 530-5000
11 Facsimile: (212) 530-5219

12 *Attorneys for Defendant Apple Inc.*

13

14                 **UNITED STATES DISTRICT COURT**

15          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

16

17 REMBRANDT PATENT INNOVATIONS,          Case No. 3:14-cv-05094-WHA (lead case);
   LLC and REMBRANDT SECURE              Case No. 3:14-cv-05093-WHA
18 COMPUTING, LP.,

19        Plaintiffs,                      **APPLE INC.'S NOTICE OF MOTION
                                           AND MOTION TO COMPEL
20        v.                               DOCUMENTS IMPROPERLY
                                           WITHHELD**
21 APPLE INC.,
                                           Date:        January 27, 2016
22        Defendant.                       Time:        9:00 a.m.
                                           Department:  Courtroom 8, 19th Floor
23                                         Judge:       Hon. William H. Alsup

24

25

26

27

28

1 **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2     **PLEASE TAKE NOTICE** that on January 27, 2016 at 9:00 a.m., or as soon thereafter as

3 this motion may be heard, in Courtroom 8 of the above-captioned court, located at 450 Golden

4 Gate Avenue, San Francisco, California 94102, Defendant Apple Inc. ("Apple") will and hereby

5 does move the Court for an order compelling Plaintiffs Rembrandt Secure Computing LP and

6 Rembrandt Patent Innovations LLC (collectively, "Rembrandt") to produce documents pursuant

7 to Federal Rules of Civil Procedure 26, 34 and 37 and the Court's Supplemental Order to Order

8 Setting Initial Case Management Conference (ECF No. 25) ("CMC Order").

9     Based on the accompanying memorandum of points and authorities, the supporting

10 declaration of Mark C. Scarsi, and the evidence and documents cited herein, Apple respectfully

11 requests that this Court compel Rembrandt to produce documents improperly withheld on the

12 purported grounds of attorney client privilege, common legal interest and/or work product

13 protection.

14

15 DATED:  January 6, 2016       By: /s/ Mark C. Scarsi

16                      Mark C. Scarsi (SBN 183926)
                     mscarsi@milbank.com

17                      Miguel Ruiz (SBN 240387)
                     mruiz@milbank.com

18                      Ashlee N. Lin (SBN 275267)
                     ashlee.lin@milbank.com

19                      MILBANK, TWEED, HADLEY &MCCLOY LLP
                     601 South Figueroa Street, 30th Floor

20                      Los Angeles, California 90017-5735
                     Telephone: (213) 892-4000

21                      Facsimile: (213) 629-5063

22                      Christopher J. Gaspar (*admitted Pro Hac Vice*)
                     cgaspar@mibank.com

23                      Andrew Lichtenberg (*admitted Pro Hac Vice*)
                     alichtenberg@milbank.com

24                      MILBANK, TWEED, HADLEY &MCCLOY LLP
                     28 Liberty Street

25                      New York, NY 10005
                     Telephone: (212) 530-5000

26                      Facsimile: (212) 530-5219

27                      ***Attorneys for Defendant Apple Inc.***

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Diagnostics Sys. Corp. v. Symantec Corp.*,
5
No. SA CV 06–1211 (DOC), 2008 WL 9396387 (C.D. Cal. Aug. 12, 2008),
*aff'd*, 328 Fed. Appx. 621 (Fed. Cir. 2008) ................................................................7, 13, 14

6

*Elan Microelectronics Corp. v. Apple, Inc.*,
7
No. C 09-01531 RS (PSG), 2011 WL 3443923 (N.D. Cal. Aug. 8, 2011).....................6, 9, 18

8

*In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*,
9
357 F.3d 900 (9th Cir. 2003) ........................................................................................7

10

*Research Inst. for Med. & Chem., Inc. v. Wisc. Alumni Research Found.*,
114 F.R.D. 672 (W.D. Wisc. 1987) ...............................................................................9

11

*SanDisk Corp. v. Round Rock Research LLC*,
12
Nos. 11–cv–05243–RS (JSC), 13–mc–80271–RS (JSC), 13–mc–80271–RS
(JSC), 2014 WL 691565 (N.D. Cal. Feb. 21, 2014) ...................................... *passim*

13

*Thought, Inc. v. Oracle Corp.*,
14
No. 12-CV-05601-WHO MEJ, 2014 WL 3940294 (N.D. Cal. Aug. 11, 2014)............. *passim*

15

*United States v. Martin*,
16
278 F.3d 988 (9th Cir. 2002) .........................................................................5, 10, 16

17

*United States v. Ruehle*,
583 F.3d 600 (9th Cir. 2009) .........................................................................................5

18

**Other Authorities**

19

Civil L.R. 7-8 and 37-4 ......................................................................................................3

20

ADR L.R. 8-1......................................................................................................................2, 18

21

Fed. R. Civ. P. 26............................................................................................... *passim*

22

Fed. R. Civ. P. 37................................................................................................................3

23

Fed. R. Civ. P. 53................................................................................................................2, 18

24

25

26

27

28

i

# TABLE OF CONTENTS

Page No.

**I.     INTRODUCTION AND STATEMENT OF THE ISSUES TO BE DECIDED** ......... 1

**II.    RELEVANT PROCEDURAL BACKGROUND** .................................................... 2

**III.   RELEVANT FACTUAL BACKGROUND** .......................................................... 4

**IV.    LEGAL STANDARD** .......................................................................................... 5

    A.    Attorney-Client Privilege & Common Legal Interest ............................. 5

    B.    Work Product Protection ......................................................................... 6

    C.    Logging of Withheld and Redacted Materials ........................................ 7

**V.     ARGUMENT** ...................................................................................................... 8

    A.    Communications Between Penn and the Named Inventors After the Patent-in-Suit Issued Are Not Protected to the Extent Asserted by Rembrandt .................... 8

    B.    Communications Between Rembrandt and the Named Inventors Before the Named Inventors Assigned Their Rights in the Patent-in-Suit to Rembrandt Are Not Protected to the Extent Asserted by Rembrandt ..................................... 12

        1.    Rembrandt's Work Product Claims ............................................. 12

        2.    Rembrandt's Attorney-Client Privilege & Common Legal Interest Claims ........................................................................................... 15

**VI.    CONCLUSION** ................................................................................................. 18

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION AND STATEMENT OF THE ISSUES TO BE DECIDED

3   For more than a year, Rembrandt has improperly withheld documents in their entirety and

4 redacted others based on unsupportable claims of attorney-client privilege, common legal

5 interest, and attorney work product protection.  Apple challenged Rembrandt's claims in October

6 2014 and has continued to do so since then, including by challenging 838 specific privilege log

7 entries in a March 2015 letter.  In October 2015, Apple sought this Court's assistance with

8 Rembrandt's unsupportable claims. (ECF No. 105.)  In response to Apple's challenges,

9 Rembrandt[1] has removed from its privilege logs 612 of the 838 entries challenged in Apple's

10 March 2015 letter – *i.e.*, 73% of the challenged entries.  However, Rembrandt continues to

11 improperly withhold, in whole or in part, hundreds of documents.

12   To the extent Apple can understand Rembrandt's assertions based on its insufficient

13 privilege logs and supporting declaration and deposition testimony, Rembrandt seeks, contrary to

14 applicable law, to withhold discoverable information by, *inter alia*, (1) mischaracterizing

15 **business** advice from non-lawyers and in-house lawyers at Rembrandt and the University of

16 Pennsylvania ("Penn") as legal advice, (2) mischaracterizing common **business** interests between

17 the Named Inventors, Penn, and Rembrandt as common legal interests, and (3) claiming work

18 product protection over materials that were not created by or at the direction of attorneys in

19 anticipation of litigation, or that were "assembled in the ordinary course of business" and thus

20 are not protectable as work product.  *See* Fed. R. Civ. P. 26 advisory committee's note.

21   Accordingly, and for the reasons set forth below, Apple seeks an order from this Court

22 compelling Rembrandt to produce documents improperly withheld on the purported grounds of

23
---

[1] References herein to Rembrandt's productions and privilege logs refer to productions and

24 privilege logs provided by Rembrandt on its own behalf and on behalf of the named inventors of
U.S. Patent No. 6,185,678 (the "Patent-in-Suit"): William A. Arbaugh, David J. Farber, Angelos

25 D. Keromytis, and Jonathan M. Smith (the "Named Inventors").  On September 16, 2014,
Rembrandt's counsel accepted service of Apple's subpoenas to the Named Inventors for

26 deposition attendance and the production of documents.  Rembrandt's counsel subsequently
produced documents and privilege logs on behalf of the Named Inventors.  To the extent

27 Rembrandt contends that it is unwilling or unable to comply with an order compelling production
of the Named Inventors' documents, Apple requests that the Court's order also be directed to the

28 Named Inventors in their individual capacities.

- 1 –

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

attorney client privilege, common legal interest, and/or the work product doctrine.  Given that hundreds of documents remain in dispute between the parties – and that number may increase as discovery progresses because Rembrandt has not completed its document productions – Apple respectfully proposes that the Court:

(**1**) resolve the legal issues raised herein by holding that Rembrandt must produce the following categories of documents: (a) communications between the Named Inventors and Penn after the Patent-in-Suit issued, and (b) communications between the Named Inventors and Rembrandt prior to Rembrandt's acquisition of the Patent-in-Suit;

(**2**) order Rembrandt to produce withheld documents consistent with the Court's legal determinations (regardless of whether they are among the 838 specifically challenged by Apple); and

(**3**) if Rembrandt continues to withhold challenged documents, appoint a special master or other neutral individual to make document-specific determinations *in camera* based on the Court's rulings.  *See* Fed. R. Civ. P. 53; ADR L.R. 8-1.

## II. RELEVANT PROCEDURAL BACKGROUND

Rembrandt filed the first of the pending actions[2] on January 10, 2014.  On September 9, 2014, Apple served Rembrandt with a notice of intent to subpoena the Named Inventors. (Declaration of Mark C. Scarsi in Support of Defendant Apple Inc.'s Motion to Compel Documents Improperly Withheld ("Scarsi Decl.") ¶ 2.)  On September 16, 2014, counsel for Rembrandt accepted service of the subpoenas on behalf of each of the Named Inventors and, in October 2014, counsel for Rembrandt produced documents and privilege logs on behalf of each of the Named Inventors.  (*Id.*)  Since October 2014, Apple has challenged Rembrandt's privilege and work product assertions as overly broad (*see* ECF No. 105-4), including by challenging 838 specific privilege log entries in a March 2015 letter (*see* ECF No. 105-2; Scarsi Decl ¶ 3).

In response to Apple's stated concerns regarding Rembrandt's privilege and work product assertions, Rembrandt selectively produced approximately 270 previously withheld

---

[2] Case No. 3:14-cv-05093-WHA.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

documents, but refused to withdraw its privilege and work product assertions.  (Scarsi Decl. ¶¶ 4–5.)  This forced Apple to file a letter brief on October 16, 2015 apprising the Court of these issues.  (ECF No. 105.)  As a result, the Court ordered Rembrandt to provide declarations in support of each of Rembrandt's assertions of privilege with respect to each privilege log entry that Apple had challenged and make the declarants available for deposition.  (ECF No. 112.)  After the Court issued its order, Rembrandt selectively produced an additional 342 previously withheld or redacted documents.[3]  (Scarsi Decl. ¶ 5.)

Following the Court's order (ECF No. 112.), Rembrandt provided declarations from five witnesses, and Apple has deposed each of those witnesses.  The witnesses are:

- ***William A. Arbaugh***, Named Inventor (Declaration of William A. Arbaugh, dated November 25, 2015, Exhibit 1 to Scarsi Decl. ("Arbaugh Decl.") ¶ 1);

- ***Angelos D. Keromytis***, Named Inventor (Declaration of Angelos D. Keromytis, dated November 20, 2015, Exhibit 2 to Scarsi Decl. ("Keromytis Decl.") ¶ 1);

- ***Kathryn A. Donohue***, Director, Legal Affairs of the Penn Center for Innovation (and its predecessor, the Center for Technology Transfer ("CTT"), Associate General Counsel of Penn (Declaration of Kathryn A. Donohue, dated November 24, 2015, Exhibit 3 to Scarsi Decl. ("Donohue Decl.") ¶ 1);

- ***Steven B. Kelber***, Counsel to Named Inventors, Kelber Law Group (Declaration of Steven B. Kelber, dated November 24, 2015, Exhibit 4 to Scarsi Decl. ("Kelber Decl.") ¶ 1); and

- ***Daniel H. Golub***, Counsel at Rembrandt IP Management LLC (Declaration of Daniel H. Golub, dated November 25, 2015, Exhibit 5 to Scarsi Decl. ("Golub Decl.") ¶ 1).

Of the 838 privilege log entries that Apple formally challenged in March 2015, Rembrandt no longer asserts privilege with respect to 612 (73%) of them.  (Donohue Decl. Ex. B; Scarsi Decl. ¶¶ 4–5.)  These later-produced documents, privilege declarations, and corresponding depositions confirm that Rembrandt had no basis for withholding or redacting the logged documents and, Apple submits, further confirm the need for *in camera* review of any challenged documents on Rembrandt's logs that are not otherwise ordered produced.

---

[3] Apple intends to seek expenses and attorneys' fees from Rembrandt in connection with the instant motion and related discovery given Rembrandt's failure to timely produce these 342 documents and the additional documents Rembrandt refuses to produce.  *See* Fed. R. Civ. P. 37(a); Civil L.R. 7-8 and 37-4.  Rembrandt's gamesmanship has put a substantial discovery burden on Apple.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## III.    RELEVANT FACTUAL BACKGROUND

While the application for the Patent-in-Suit was pending, the Named Inventors assigned their rights in the Patent-in-Suit to Penn.  (Arbaugh Decl. Ex. A.)  The Patent-in-Suit issued on February 6, 2001.  (Arbaugh Decl. ¶ 7.)  Penn returned its rights in the Patent-in-Suit to the Named Inventors effective October 14, 2010.  (Arbaugh Decl. Ex. E at Ex. H.)  During the period after the Patent-in-Suit issued and before Penn assigned its rights back to the Named Inventors in October 2010, the Named Inventors' interests with respect to the Patent-in-Suit were as follows: the Named Inventors were entitled to certain royalties in the event that Penn realized revenue on the Patent-in-Suit, and Penn had the option (but not the obligation) to return the Patent-in-Suit to the Named Inventors at some point in the future.  (Arbaugh Decl. ¶ 10; Keromytis Decl. ¶ 9; Transcript of December 15, 2015 Deposition of William A. Arbaugh, Exhibit 6 to Scarsi Decl. ("Arbaugh Tr.") at 20:16–22:8; Transcript of December 30, 2015 Deposition of Angelos D. Keromytis, Exhibit 7 to Scarsi Decl. ("Keromytis Tr.") at 19:22–20:1.)  After Penn assigned its rights in the Patent-in-Suit back to the Named Inventors in October 2010, Penn's material interests in the Patent-in-Suit were as follows: Penn was entitled to a royalty on revenue generated by the Patent-in-Suit, and Penn had a royalty-free license to practice the patent.  (*See* Arbaugh Decl. Ex. A.)

The Plaintiff Rembrandt entities are non-practicing entities ("NPEs") solely in the business of acquiring and enforcing patents.  (Transcript of December 23, 2015 Deposition of Daniel H. Golub, Exhibit 8 to Scarsi Decl. ("Golub Tr.") at 18:11–21:3.)  On February 23, 2011, Rembrandt first met with Named Inventors to express Rembrandt's desire to acquire an interest in the Patent-in-Suit.  (Golub Decl. ¶ 4.)  Between February 23, 2011 and June 23, 2011, Rembrandt engaged in negotiations with the Named Inventors to acquire an option to purchase the Named Inventors' rights in the Patent-in-Suit, which option was acquired on June 23, 2011, pursuant to a "Patent Acquisition Agreement."  (Golub Decl. Ex. B.)  Between June 23, 2011, and July 3, 2013, Rembrandt engaged in "diligence" with respect to the Patent-in-Suit before ultimately acquiring the Named Inventors' rights in the Patent-in-Suit on July 3, 2013.  (Golub

- 4 –

1   Tr. at 71:7–72:12; Patent Acquisition Agreement Including Assignment Executed on July 3,

2   2013, Exhibit 9 to Declaration of Mark C. Scarsi, at Ex. A.)  At no time before July 3, 2013 did

3   Rembrandt have any ownership interest in the Patent-in-Suit.  (*See id.*)

4   **IV.    LEGAL STANDARD**

5        A party asserting the attorney-client privilege or work product protection has the burden

6   of establishing that the privilege or protection applies, including that it has not been waived.  *See,*

7   *e.g.*, *United States v. Ruehle*, 583 F.3d 600, 607–08 (9th Cir. 2009); *United States v. Martin*, 278

8   F.3d 988, 999–1000 (9th Cir. 2002), as amended on denial of reh'g (Mar. 13, 2002); *SanDisk*

9   *Corp. v. Round Rock Research LLC*, Nos. 11–cv–05243–RS (JSC), 13–mc–80271–RS (JSC),

10  13-mc-80271-RS (JSC), 2014 WL 691565, at *2 (N.D. Cal. Feb. 21, 2014).

11       **A.    Attorney-Client Privilege & Common Legal Interest**

12       A communication is protected by the attorney-client privilege only "where the *primary or*

13  *predominant purpose* of the attorney-client consultation is to seek legal advice or assistance."

14  *SanDisk Corp*, 2014 WL 691565 at *3 (emphasis in original) (internal quotation marks and

15  citations omitted).  "Because it impedes full and free discovery of the truth, the attorney-client

16  privilege is strictly construed."  *Ruehle*, 583 F.3d at 607.

17       In the context of NPEs like Rembrandt, courts in the Northern District of California and

18  elsewhere have held that "evaluating patents to acquire and targets to assert those patents

19  against" are "clearly business functions, and documents resulting from these functions cannot be

20  categorized in sweeping assertions of privileges[.]"  *Thought, Inc. v. Oracle Corp.*, No. 12-CV-

21  05601-WHO MEJ, 2014 WL 3940294, at *3 (N.D. Cal. Aug. 11, 2014) (quoting *Diagnostics*

22  *Sys. Corp. v. Symantec Corp.*, No. SA CV 06–1211 (DOC), 2008 WL 9396387, at *8 (C.D. Cal.

23  Aug. 12, 2008), *aff'd*, 328 Fed. Appx. 621 (Fed. Cir. 2008)).  Instead, "[t]he Court must draw the

24  distinction between documents created when employees were functioning primarily as attorneys

25  and documents created when employees were functioning in the capacity of furthering business

26  goals."  *Id.* (citing *Diagnostics Sys. Corp.*, 2008 WL 9396387, at *5).  For example,

27  communications relating to an agreement between Thought Inc. and Rembrandt IP Management,

28

- 5 –

LLC – an affiliate of Plaintiffs – "appear[ed] to be primarily for business, not litigation functions" given that the agreement was focused on "pre-closing due diligence and analysis of the Assigned Patents." *Id.* Similarly, "an analysis and overview of [the NPE's target's] business" is not privileged. *SanDisk*, 2014 WL 691565, at *3.

If documents that are protected by the attorney-client privilege in the first instance are shared with third parties, the privilege will be waived unless the common interest doctrine applies. "The common interest doctrine is a narrow exception to the general rule that disclosing information to a third party constitutes a waiver of privilege." *Thought, Inc.*, 2014 WL 3940294, at *2 (citing cases). "The common interest privilege applies where (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived. The common interest must be a legal interest. It does not extend to communications about a joint business strategy that happens to include a concern about litigation." *Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS (PSG), 2011 WL 3443923, at *2 (N.D. Cal. Aug. 8, 2011) (internal quotation marks and footnotes omitted). As the court in *Thought* held with respect to Plaintiffs' affiliate, NPE negotiations relating to monetizing a patent are not eligible for common interest protection:

> Even if some of the NPE communications are privileged, the dominant interests between Thought and the NPEs were deciding whether to become business partners in monetizing the patent portfolio. As the negotiations were not made in an effort to formulate a joint defense, this is a non-privileged business decision. This is true even if the correspondence had potential relevance to a hypothetical litigation—such interest is secondary to the immediate business decision of whether to purchase the patents. The interests of the parties were thus commercial and not eligible for common-interest privilege.

*Thought, Inc.,* 2014 WL 3940294, at *3 (internal citations omitted).

## B.    Work Product Protection

The work product doctrine, as set forth in Fed. R. Civ. P. 26(b)(3), applies only to documents and things that "are prepared in anticipation of litigation or for trial by or for another party or its representative. . . ." The Ninth Circuit has interpreted the "anticipation of litigation" requirement to be satisfied if "in light of the nature of the document and the factual situation in

- 6 –

the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*, 357 F.3d 900, 907 (9th Cir. 2003) (internal quotation marks and citation omitted). "With respect to dual-purpose documents—that is, documents that were arguably created in anticipation of litigation but also for a non-litigation purpose—the further question is whether 'taking into account the facts surrounding their creation, their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole.'" *SanDisk Corp.*, 2014 WL 691565, at *3 (quoting *In re Grand Jury Subpoena*, 357 F.3d at 910). An NPE's business model does not allow it to claim that it anticipated litigation as soon as it identified a potential patent infringer – instead litigation is anticipated only when the NPE has "formalized specific litigation plans." *Diagnostics Sys. Corp.*, 2008 WL 9396387, at *6.

In addition, the advisory committee notes to Fed. R. Civ. P. 26 clarify that "[m]aterials assembled in the ordinary course of business" are not protectable as work product. Fed. R. Civ. P. 26 advisory committee's note. This limitation on the scope of work product protection is particularly relevant for an NPE like Rembrandt, which may "set up its business in such a way to allow Plaintiff to argue that many documents, including those central to Plaintiff's primary business, are privileged documents." *Diagnostics Sys. Corp.*, 2008 WL 9396387, at *5; *id.* at *7 ("If the Court were to adopt [Plaintiff's] position with respect to the work product doctrine, virtually all activities engaged in by a company premised entirely on licensing and/or enforcing patents via litigation would be classified as 'in anticipation of litigation' and would therefore be work product; such a sweeping application of the work product doctrine is unsupported."); *see also SanDisk Corp.*, 2014 WL 691565, at *2–4; *Thought, Inc.*, 2014 WL 3940294, at *2–3.

## C.    Logging of Withheld and Redacted Materials

The Court's CMC Order requires that privilege logs "must be sufficiently detailed and informative to justify the privilege. No generalized claims of privilege or work-product protection shall be permitted." (ECF No. 25 ¶ 16 (citing Fed. R. Civ. P. 26(b)(5)).) The

- 7 –

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    asserting party must disclose, *inter alia*, "the subject matter of the communication."  (*Id.* ¶ 16.)

2    "Failure to furnish this information at the time of the assertion will be deemed a waiver of the

3    privilege or protection."  (*Id.* ¶ 16.)

4    **V.    ARGUMENT**

5            Rembrandt continues to improperly withhold documents based on purported attorney-

6    client privilege, common legal interest, and work product grounds.  In particular, Rembrandt is

7    withholding communications between Penn and the Named Inventors that took place after the

8    Patent-in-Suit issued (*i.e.*, at a time *after* all patent "prosecution" activities to obtain issuance of

9    the patent from the U.S. Patent & Trademark Office had ended), but Rembrandt has failed to

10   meet its burden to show that such communications were privileged and subject to a common

11   legal interest.  Moreover, Rembrandt is withholding communications between the Named

12   Inventors and Rembrandt before Rembrandt's acquisition of the Patent-in-Suit.  Rembrandt has

13   no basis to claim attorney-client privilege or work product protection over communications

14   between two parties whose relationship at the relevant time was a *potential* business endeavor,

15   not an actual or legal one, and where the facts belie Rembrandt's broad work product assertions,

16   as discussed below.

17           **A.    Communications Between Penn and the Named Inventors After the Patent-in-Suit Issued Are Not Protected to the Extent Asserted by Rembrandt**

18           Apple does not dispute that the Named Inventors and Penn may have exchanged

19   privileged communications in connection with the prosecution of the Patent-in-Suit before it

20   issued.  Before the Patent-in-Suit issued, pursuant to Penn's policy, the Named Inventors, were

21   bound to assist Penn with respect to patent prosecution.  (Donohue Decl. Ex. A.) ("INVENTORS

22   shall assign to the University all right, title and interest in and to the INVENTIONS,

23   MATERIALS and related patents and *shall cooperate fully with the University in the*

24   *preparation and prosecution of patents*.") (emphasis added).

25           But, after the Patent-in-Suit issued, the Named Inventors had no continuing obligation to

26   Penn with respect to the Patent-in-Suit.[4]  The two Named Inventors who submitted declarations

27   _____

28   [4] That the Named Inventors had no continuing obligation to Penn after the Patent-in-Suit issued distinguishes the instant case from *Research Inst. for Med. & Chem., Inc. v. Wisc. Alumni*

- 8 –

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1   and were deposed in connection with the pending privilege issue – William A. Arbaugh and

2   Angelos D. Keromytis – cited two facts in support of their purported common interest with Penn

3   after the Patent-in-Suit issued and before Penn assigned its rights in the Patent-in-Suit to the

4   Named Inventors in October 2010:  (1) the Named Inventors were entitled to certain royalties in

5   the event that Penn realized revenue on the Patent-in-Suit, and (2) Penn had the option (but not

6   the obligation) to return the Patent-in-Suit to the Named Inventors at some point in the future.

7   (Arbaugh Decl. ¶ 10; Keromytis Decl. ¶ 9; Arbaugh Tr. at 20:16–22:8; Keromytis Tr. at 19:22–

8   20:1 .)[5]  These are both commercial, not legal, interests, and thus are not protectable under the

9   common interest doctrine.  *See Elan Microelectronics Corp.*, 2011 WL 3443923, at *2 ("The

10   common interest must be a legal interest."); *see also Thought, Inc.,* 2014 WL 3940294, at *3

11   (Where "potential relevance to a hypothetical litigation" was "secondary to the immediate

12   business decision," the "interests of the parties were [] commercial and not eligible for common-

13   interest privilege.").  Similarly, no common legal interest existed after Penn assigned its rights in

14   the Patent-in-Suit to the Named Inventors in October 2010 given that Penn's stake in the patent

15   at that point was focused on ████████████████ – a business interest.  (Transcript of

16   December 8, 2015 Deposition of Kathryn A. Donohue, Exhibit 10 to Scarsi Decl. ("Donohue

17   Tr.") at 45:12–46:10.)  The lack of a common legal interest is particularly clear here where Drs.

18   Arbaugh and Keromytis do not recall performing any work to assist Penn with respect to the

19   enforcement or maintenance of the Patent-in-Suit after it issued.  (Arbaugh Tr. at 21:8–22:8;

20   Keromytis Tr. at 14:8–15:22.)  As the Court aptly pointed out at the October 26, 2015 hearing, if

21   the Named Inventors and Penn (or the Named Inventors and Rembrandt) actually had a common

22

---

23   *Research Found.*, 114 F.R.D. 672, 678 (W.D. Wisc. 1987), cited in Rembrandt's October 23,
    2015 Letter Brief (ECF No. 110).  The named inventors in *Research Institute for Medicine &*
24   *Chemistry*, unlike the Named Inventors in the instant case, were bound to "cooperate in the
    prosecution of patent applications *and any litigation involving the issued patents.*"  *Research*
25   *Inst. for Med. & Chem., Inc.*, 114 F.R.D. at 678 (emphasis added).

26   [5] Drs. Arbaugh and Keromytis acknowledged that their statements regarding a perceived
    common interest with Penn after the Patent-in-Suit issued were not intended to state that a
27   common *legal* interest existed.  (Keromytis Tr. at 12:8–16  (████████████████████
    ████████████████████████████████████████████████████████████
28   ████████████████████████████████████").)

- 9 –

1  *legal* interest with respect to the Patent-in-Suit, Rembrandt likely would not have standing in this

2  action.[6]

3        Even if Rembrandt could establish that a common legal interest existed between Penn

4  and the Named Inventors after the Patent-in-Suit issued – which Rembrandt cannot – Rembrandt

5  has not met its burden to show that the challenged documents, purportedly created by Penn's in-

6  house attorneys or at their direction, were privileged in the first instance.  Rembrandt provided

7  Apple with declarations from Dr. Arbaugh and Ms. Donohue (of Penn) purporting to justify

8  specific privilege log entries related to communications between Penn and the Named Inventors.

9  As the depositions of these two individuals made clear, however, their declarations do not justify

10  Rembrandt's privilege assertions.

11        Ms. Donohue's declaration and deposition testimony highlight Rembrandt's failure to

12  justify its privilege assertions.  *See Martin*, 278 F.3d at 999–1000 (burden of justifying privilege

13  assertions is on asserting party).  Ms. Donohue states in her declaration that she oversaw the

14  "Legal Group" within CTT, which provided advice with respect to various issues including

15  ████████████████████████████████ (Donohue Decl. ¶ 5.)  Ms. Donohue

16  acknowledged in her deposition that there were non-legal aspects of this advice.  (Donohue Tr. at

17  31:5–32:24.)  Ms. Donohue's declaration identifies eleven CTT employees with whom Ms.

18  Donohue worked, and who may have conveyed Ms. Donohue's advice to others according to her

19  declaration.  (Donohue Decl. ¶¶ 6–7.)  Of the eleven individuals, only two are attorneys to Ms.

20  Donohue's knowledge, one of whom is Penn's general counsel.  (*Id.* ¶ 6; Donohue Tr. at 27:14–

21  25.)  Only one of these eleven individuals – a non-lawyer – worked within CTT's Legal Group to

22  Ms. Donohue's knowledge, as the head of the file room.  (Donohue Tr. at 36:17–38:21.)  CTT's

23  other groups included at least "████████████████████████████████." (*Id.* at

24  59:15–60:2.)  Of the eleven individuals identified in Ms. Donohue's declaration, Tom Fitzsimons

---

25  [6] (*See* Hearing Transcript of October 26, 2015, Exhibit 11 to Scarsi Decl. ("Oct. 26, 2015 Hr'g.
26  Tr.") at 12:16–20 ("And if it goes too far toward a common interest, then the plaintiff doesn't
    have standing, because I think they've got -- the law used to be, anyway, they have to have an
27  exclusive right. They can't be sharing that with the inventors.").)  This fact also highlights one of
    the reasons the requested discovery is important to Apple: it may assist Apple in identifying
28  potential standing issues.

1   appears on Rembrandt's privilege log for challenged entries most frequently, in 41 of 226

2   entries.  (Donohue Decl. ¶ 6 & Ex. B)  Ms. Donohue testified that Mr. Fitzsimons was a non-

3   lawyer "███████████" who was involved in attempting to license the Patent-in-Suit, but she

4   could not recall if he communicated legal advice on her behalf in connection with the Patent-in-

5   Suit.  (Donohue Tr. at 39:9–40:21; 64:20–65:5.)

6            This record is insufficient to justify the privilege assertions Rembrandt seeks to justify.

7   For example, with respect to "Challenged Entry" #834, a July 27, 2008 communication from

8   Named Inventor Jonathan Smith to Tom Fitzsimons (according to Rembrandt's privilege log,

9   Donohue Decl. Ex. B), Ms. Donohue wrote in her declaration:  "Document 834 is a series of

10  confidential emails between employees reflecting legal advice from the CTT Legal Group

11  through T. Fitzsimons with respect to enforcement of the '678 Patent."  (Donohue Decl. ¶ 25(d).)

12  Neither Ms. Donohue's declaration nor Rembrandt's privilege log identify the attorney who

13  provided the advice nor do they show that the advice was legal advice as opposed to business

14  advice.[7]  That the only Penn employee involved in the communication was a non-lawyer

15  licensing officer tends to indicate that the communication did not contain legal advice.

16  Similarly, Ms. Donohue could not explain during her deposition whose legal advice was

17  reflected in a series of communications and whether they were created in the ordinary course of

18  Penn's business.  (Donohue Tr. at 94:4–98:5.)  Ms. Donohue did not join Penn until May 2006,

19  so her declaration statements with respect to pre-May 2006 documents were premised on a

20  retrospective reconstruction based on "███████████████████" and "████████████."  (*Id.* at

21  102:5–21.)  Dr. Arbaugh's declaration provides little further assistance in assessing Penn's

22  privilege assertions, as he ████████████████████████████████████████████████████

23  which undermines the reliability of his declaration given the substantial amount of non-legal

24  work done by non-attorneys and attorneys at CTT, as summarized above.  (Arbaugh Tr. at

25  132:22–24.)

26  ───────────────────
[7] Rembrandt's Privilege Log for Challenged Entries (Donohue Decl. Ex. B) and the declarations
27  of Ms. Donohue, Dr. Arbaugh, and Mr. Kolub, which purport to justify specific privilege log
    entries, fail in most cases to identify the specific attorney providing the purported legal advice or
28  attorney work product.

                                          - 11 –

For all of the foregoing reasons, Rembrandt has failed to justify its assertions of attorney-client privilege, common legal interest, and work product protection with respect to communications between Penn and the Named Inventors after the Patent-in-Suit issued.

### B. Communications Between Rembrandt and the Named Inventors Before the Named Inventors Assigned Their Rights in the Patent-in-Suit to Rembrandt Are Not Protected to the Extent Asserted by Rembrandt

The Plaintiff Rembrandt entities are NPEs, whose patent portfolios are at least partially managed by non-party Rembrandt IP Management LLC, which employs declarant Daniel H. Golub and was the Rembrandt entity discussed in *Thought, Inc. v. Oracle Corp.*, 2014 WL 3940294, (N.D. Cal. Aug. 11, 2014).  (Golub Tr. at 20:7–21:3.)  As was done with respect to Rembrandt IP Management LLC in *Thought*, and as other NPEs have done in other cases discussed in the Legal Standard section, *supra*, Rembrandt seeks to use its business model itself to justify withholding of discoverable business information.  Rembrandt's status as an NPE does not make every analytical communication it creates "legal advice"; nor does Rembrandt's status as an NPE subject all of its business negotiations to common legal interest protection; nor does Rembrandt's status as an NPE make every analytical document it creates attorney work product.

#### 1. Rembrandt's Work Product Claims

Rembrandt initially met with the Named Inventors on February 23, 2011 to discuss "a joint ***business*** relationship with the inventors where the parties would share in the proceeds of the enforcement of the '678 Patent."  (Golub Decl. ¶ 4 (emphasis added).)  Rembrandt is withholding as work product materials created in connection with this February 23, 2011 meeting that date back to 2010 (Golub Tr. at 41:2–6), despite the fact that Rembrandt did not (1) own the Patent-in-Suit until years later, or (2) file suit until 2014.  For example, "Challenged Entry" #242 is a presentation used at the initial February 23, 2011 meeting.  (*Id*. at 41:17–20; Donohue Decl. Ex. B.)  The presentation (1) reflected work done starting in 2010, more than three years before the instant action was filed and more than two years before Rembrandt acquired the Named Inventors' rights in the Patent-in-Suit; (2) discussed potential licensing in addition to potential enforcement via litigation; and (3) discussed technical analysis performed

- 12 –

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  by a non-lawyer. (Golub Tr. at 41:2–43:5, 24:2–18.) Moreover, the Rembrandt attendees at the

2  meeting were primarily non-lawyers per Mr. Golub's recollection. (*Id.* at 39:7–40:16.)

3         This presentation, which Rembrandt withheld on work product grounds, is a prime

4  example of the overbreadth of Rembrandt's work product assertions.[8]  Rembrandt did not have

5  "formalized specific litigation plans" before it met with the Named Inventors to discuss a

6  potential deal, more than three years before it filed suit, and more than two years before it

7  acquired rights in the Patent-in-Suit. *Diagnostics Sys. Corp.*, 2008 WL 9396387, at *6.

8  Moreover, as in *Diagnostics Systems Corp.*, Rembrandt was considering licensing the Patent-in-

9  Suit (if it ultimately acquired rights), undermining any argument that it was anticipating litigation

10  such that work product protection could apply. *See id.*[9]  Deposition testimony strongly suggests

11  that Rembrandt had not "formalized specific litigation plans" until shortly before it filed suit.

12  For example, Steven Kelber, counsel to the Named Inventors, testified that as late as September

13  2013 – months after the Named Inventors had assigned their interest in the Patent-in-Suit to

14  Rembrandt in July 2013 – he did not believe Rembrandt had decided to bring a patent

15  infringement action against any particular entity on the '678 Patent. (Transcript of December 10,

16  2015 Deposition of Steven B. Kelber, Exhibit 12 to Scarsi Decl. ("Kelber Tr.") at 34:4–36:19.)[10]

17  When this presentation was created, Rembrandt could not have been close enough to litigation to

18  trigger work product protection. More generally, Rembrandt could not have had "formalized

19  specific litigation plans" before it acquired the Named Inventors' rights to the Patent-in-Suit in

20  July 2013.[11]

---

21  [8] As the Court noted at the October 26, 2015 hearing, this presentation and similar documents
22  may reveal that Rembrandt encouraged the Named Inventors to adopt a particular interpretation
of the Patent-in-Suit, which will be highly relevant if any of the Named Inventors are called as
23  witnesses. (*See* Oct. 26, 2015 Hr'g. Tr. at 9:9–10:8.)

24  [9] To the extent the Court credits Rembrandt's argument that these materials were created in
anticipation of litigation, the Court or a special master should consider whether "their litigation
purpose so permeates any non-litigation purpose that the two purposes cannot be discretely
25  separated from the factual nexus as a whole.'" *SanDisk Corp.*, 2014 WL 691565, at *3 (quoting
*In re Grand Jury Subpoena*, 357 F.3d at 910).

26  [10] Angelos Keromytis recalled only that he learned of a plan to sue Apple sometime between
27  2011 and 2013. (Keromytis Tr. at 40:1–8.)

28  [11] Rembrandt's references to legalistic language in a Non-Disclosure Agreement and the Patent
Acquisition Agreement do not create work product protection or privilege where it does not

- 13 –

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1    Separately, the presentation and similar documents are not protectable as work product

2  because they were "assembled in the ordinary course of [Rembrandt's] business."  Fed. R. Civ.

3  P. 26 advisory committee's note.  From the time Rembrandt began working on the presentation

4  in 2010 to July 3, 2013 (the date the Named Inventors assigned their rights in the Patent-in-Suit

5  to Rembrandt), Rembrandt worked on a variety of "▓▓▓▓▓" items in connection with the

6  Patent.  (Golub Tr. at 23:2–24:18, 48:11–52:5, 71:7–79:12.)  Mr. Golub, another lawyer, and a

7  number of non-lawyers performed various analyses with respect to the Patent-in-Suit, including

8  "▓▓▓▓" and ▓▓▓▓▓▓ analyses.  (*Id*. at 71:7–79:12.)  The primary job of these individuals at

9  Rembrandt was to perform such "diligence" – they spent "▓▓▓▓▓▓▓▓▓▓▓

10  ▓▓▓▓▓▓▓▓▓▓▓▓" – up to "▓▓▓▓▓▓▓" of their time.  (*Id*. at 72:25–73:20.)  The

11  work they did was in the ordinary course of Rembrandt's business as contemplated by the

12  advisory committee notes to Rule 26.  "If the Court were to adopt [Plaintiffs'] position with

13  respect to the work product doctrine, virtually all activities engaged in by a company premised

14  entirely on licensing and/or enforcing patents via litigation would be classified as 'in anticipation

15  of litigation' and would therefore be work product; such a sweeping application of the work

16  product doctrine is unsupported.");  *Diagnostics Sys. Corp.*, 2008 WL 9396387, at *7 *see also*

17  *SanDisk Corp.*, 2014 WL 691565, at *2–4; *Thought, Inc.*, 2014 WL 3940294, at *2–3.

18    In several instances, Rembrandt bases its work product withholding on the fact that a

19  document relates to "patent rights."  But "patent rights" is itself a vague term that became even

20  more ambiguous during depositions when Apple sought clarification regarding its meaning.  For

21  example, Mr. Golub said patent rights would "▓▓▓▓▓▓▓▓▓▓▓▓

22  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

23  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓"  (Golub Tr. at 8:12–9:8.)  When

24  asked to contrast the meaning of "patent rights" with the meaning of "enforcement" – as these

25  are the two most frequently used terms in the declarations and privilege logs that purportedly

26  identify the "subject matter" of the communications, as required by this Court – Mr. Golub said

27  _____

28  otherwise exist.

- 14 –

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

"█████████████████████████████████████████████

█████████████████" (*Id.* at 9:9–13.)  Through Mr. Golub's deposition, Apple was able to

determine that some of the purported work product related to "patent rights" arose in the

following context:  Rembrandt was ███████████████████ in the Patent-in-Suit but did

not anticipate litigation with respect to the third-party; however, Rembrandt claimed work

product protection over these attempts to address third-party rights because Rembrandt was, in

some extremely broad sense, preparing for patent infringement litigation by addressing potential

third-party rights in the Patent-in-Suit.  (*Id.* at 59:12–24, 102:18–104:19.)  Rembrandt again

stretches the definition of work product too far:  Where Rembrandt did not anticipate litigation

vis-à-vis the third party from which the rights were being secured, Rembrandt could not have

anticipated litigation with respect to third-party rights.

　　　　Rembrandt's work product assertions are overly broad for a number of reasons:

Rembrandt is withholding material that was not created in anticipation of litigation against Apple

or third parties, including material created before Rembrandt met with the Named Inventors or

had any ownership interest in the Patent-in-Suit.  Moreover, Rembrandt is withholding material

created in the ordinary course of Rembrandt's business, including by non-lawyer employees

performing business analyses.

### 2.　Rembrandt's Attorney-Client Privilege & Common Legal Interest Claims

　　　　As in the work product context, Rembrandt seeks to hide behind its business model to

avoid producing discoverable business information by claiming privilege.  Rembrandt has failed

to carry its burden to show that the documents it has withheld as privileged were primarily

directed to legal advice.  *See Martin*, 278 F.3d at 999–1000 (burden of justifying privilege

assertions is on asserting party).  Rembrandt's reliance on vague terms like "patent rights" and

"enforcement" is insufficient to meet its burden.  Nor do legal statements by the Named

Inventors that the Named Inventors do not understand.  For example, Mr. Keromytis stated in

declaration that Rembrandt shared "attorney-client privileged communications" and "attorney

work product" (Keromytis Decl. ¶¶ 14, 18), but he admitted at deposition that he did not

- 15 –

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

understand the legal meaning of those terms (Keromytis Tr. at 27:5–30:17).[12]  Steven Kelber, counsel for the Named Inventors, testified that he "████████████████████████████████████ ████████████████████████████████████."  (Kelber Tr. 32:21–23.)  Yet, Rembrandt appears to claim that Mr. Kelber did provide advice with respect to enforcement.  (*See, e.g.*, Donohue Decl. Ex. B at "Challenged Entry" 609 (stating "attorney provided legal advice with respect to enforcement of patent in suit" – while the privilege log fails to identify who the "attorney" providing the "legal advice" was, Mr. Kelber was the sender of the communication according to the privilege log).)

These and other deficiencies in the testimonial support for Rembrandt's privilege assertions are particularly problematic given that "evaluating patents to acquire and targets to assert those patents against" are "clearly business functions, and documents resulting from these functions cannot be categorized in sweeping assertions of privileges[.]"  *Thought, Inc.*, 2014 WL 3940294, at *3 (N.D. Cal. Aug. 11, 2014) (quoting *Diagnostics Sys. Corp.*, 2008 WL 9396387, at *8).  Rembrandt's deficient assertions do not allow for the Court to properly "draw the distinction between documents created when employees were functioning primarily as attorneys and documents created when employees were functioning in the capacity of furthering business goals."  *Id.* (citing *Diagnostics Sys. Corp.*, 2008 WL 9396387, at *5).  Thus, to the extent the Court believes that any communications between the Named Inventors and Rembrandt before Rembrandt acquired rights in the Patent-in-Suit may be privileged – and Apple maintains they are not – a review *in camera* or by a special master would probably be necessary.

Given that *Thought* involved Rembrandt IP Management, LLC, the case is particularly instructive.  The *Thought* court found that work done in connection with an agreement focused on "'pre-closing due diligence and analysis of the Assigned Patents' . . . appear[ed] to be primarily for business, not litigation functions."  *Thought, Inc. v. Oracle Corp.*, 2014 WL 3940294, at *3.  That same language appears in the Patent Acquisition Agreement at issue here.  (Golub Decl. Ex. B, § 3.3.)  The language controlled the consulting obligations of the Named

─────────────────

[12] Mr. Keromytis further stated that his privilege assumptions were based at least in part on "████████████████████████████████████████."  (Keromytis Tr. at 28:9–10.)

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Inventors before "Closing" – *i.e.*, before the assignment of the Patent-in-Suit in July 2013:



(Golub Decl. Ex. B, § 3.3 (emphasis added).)  Just as in *Thought*, the due diligence being performed by Rembrandt (as described by Mr. Golub), and the technical analysis the Named Inventors were required to perform (at least "pre-Closing") pursuant to the Patent Acquisition Agreement related primarily to a business function, not a legal function.

Moreover, even if Rembrandt had shown that certain communications were privileged in the first instance – which it has not – or the Court or a special master determine that certain communications were privileged in the first instance, communications between Rembrandt and the Named Inventors (some of which also involve Penn) before the assignment of the Patent-in-Suit are not protectable under the common interest doctrine, and the privilege has thus been waived.  As outlined above, any common interest at issue before the Named Inventors assigned their interest in the Patent-in-Suit to Rembrandt was primarily a business interest, not a legal interest.  A common business interest is not a basis for common legal interest protection.  *See Elan Microelectronics Corp.*, 2011 WL 3443923, at *2 ("The common interest must be a legal interest.  It does not extend to communications about a joint business strategy that happens to include a concern about litigation.").  As the court in *Thought* held with respect to Plaintiffs' affiliate, NPE negotiations relating to monetizing a patent are not eligible for common interest protection:

> Even if some of the NPE communications are privileged, the dominant interests between Thought and the NPEs were deciding whether to become business partners in monetizing the patent portfolio. As the negotiations were not made in an effort to formulate a joint defense, this is a non-privileged business decision. This is true even if the correspondence had potential relevance to a hypothetical litigation—such interest is secondary to the immediate business decision of whether to purchase the patents.  The interests of the parties were thus commercial and not eligible for common-interest privilege.

*Thought, Inc.*, 2014 WL 3940294, at *3 (internal citations omitted).

- 17 –

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**VI.    CONCLUSION**

Based on the foregoing, Apple requests that the Court:

**(1)** resolve the legal issues raised herein by holding that Rembrandt must produce the following categories of documents: (a) communications between the Named Inventors and Penn after the Patent-in-Suit issued, and (b) communications between the Named Inventors and Rembrandt prior to Rembrandt's acquisition of the Patent-in-Suit;

**(2)** order Rembrandt to produce withheld documents consistent with the Court's legal determinations (regardless of whether they are among the 838 specifically challenged by Apple); and

**(3)** if Rembrandt continues to withhold challenged documents, appoint a special master or other neutral individual to make document-specific determinations *in camera* based on the Court's rulings.  *See* Fed. R. Civ. P. 53; ADR L.R. 8-1(c).

DATED:  January 6, 2016

By: /s/ Mark C. Scarsi
Mark C. Scarsi (SBN 183926)
mscarsi@milbank.com
Miguel Ruiz (SBN 240387)
mruiz@milbank.com
Ashlee N. Lin (SBN 275267)
ashlee.lin@milbank.com
MILBANK, TWEED, HADLEY &MCCLOY LLP
601 South Figueroa Street, 30th Floor
Los Angeles, California 90017-5735
Telephone: (213) 892-4000
Facsimile: (213) 629-5063

Christopher J. Gaspar (*admitted Pro Hac Vice*)
cgaspar@mibank.com
Andrew Lichtenberg (*admitted Pro Hac Vice*)
alichtenberg@milbank.com
MILBANK, TWEED, HADLEY &MCCLOY LLP
28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

***Attorneys for Defendant Apple Inc.***

– 18 –

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that a true copy of the foregoing document has been forwarded, via

3

CM/ECF, upon Plaintiffs' counsel of record on January 6, 2016.

4

5

6                                                                       /s/ Ashlee N. Lin
                                                                          Ashlee N. Lin

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT APPLE INC.'S MOTION TO COMPEL
3:14-CV-05094-WHA