IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REMBRANDT PATENT INNOVATIONS, LLC, and REMBRANDT SECURE COMPUTING, LP,<br><br>   Plaintiffs,<br><br>   v.<br><br>APPLE INC,<br><br>   Defendant. | No. C 14-05094 WHA (lead case)<br>No. C 14-05093 WHA<br><br><br><br><br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION TO COMPEL** |

**INTRODUCTION**

In this patent infringement action, the accused infringer filed a discovery request seeking to compel the production of numerous entries on the patent owner's privilege log. After discovery into the patent owner's privilege assertions, the accused infringer has filed a motion to compel. For the reasons stated below, the accused infringer's motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

This action concerns United States Patent Number 6,185,678 ("the '678 patent"), which issued in 2001. The '678 patent identified William A. Arbaugh, David J. Farber, Angelos D. Keromytis, and Jonathan M. Smith as the named inventors. The named inventors were all students or employees of the University of Pennsylvania at the time of the invention, so

pursuant to Penn's patent policy, they assigned their rights in the then-pending application to Penn in exchange for certain royalties on revenues realized from the invention. Pursuant to its patent policy, Penn had the option, but no obligation, to return title to the '678 patent to the named inventors (Arbaugh Decl., Exhs. A–B). Otherwise, Penn could convey the patent to others only "in extreme or unusual circumstances" subject to "approval by the President of the University" (*id.*, Exh. B ¶ 2.2.2).

Penn's written patent policy obligated the named inventors to "cooperate fully with the University in the preparation and prosecution of patents" in proceedings before the United States Patent and Trademark Office (*id.*, Exh. B ¶ 2.0). The contract governing the assignment of the patent rights to Penn further obligated the named inventors to "execute all papers necessary in connection with the application(s) and any continuing (continuation, divisional, or continuation-in part), reissue, reexamination or corresponding application(s) thereof" as well as "in connection with any interference or patent enforcement action (judicial or otherwise) related to the application(s)" (*id.*, Exh. A at 1).

The United States also claimed certain rights in the patent because at the time of the invention Dr. Arbaugh worked for the National Security Agency full time, while also enrolled as a Ph.D. student at Penn, and Dr. Smith's research was funded by government grants (Arbaugh Decl. ¶ 3).

Penn returned title to the '678 patent to the named inventors in October 2010. It retained a royalty-free non-exclusive license to the patent along with a right to fifteen percent of the first one million dollars in future royalties and ten percent of royalties in excess of one million dollars. Finally, Penn retained the right to recover for any infringement pre-dating the assignment (*id.*, Exh. E).

Plaintiffs Rembrandt Patent Innovations, LLC, and Rembrandt Secure Computing, LP, (collectively, "Rembrandt") are non-practicing entities in the business of acquiring and suing on patents. In February 2011, Rembrandt met with the named inventors to discuss forming a

relationship for the purpose of "shar[ing] in the proceeds of the enforcement of the '678 Patent" (*id.* ¶ 19). That meeting was supposedly subject to a verbal non-disclosure agreement, which Rembrandt and the named inventors later reduced to writing (*id.*, Exh. D). At the meeting, Rembrandt "identified instances of infringement of the '678 Patent and proposed a joint business relationship between the inventors and Rembrandt where Rembrandt would help [the named inventors] enforce the '678 Patent" and also identified certain issues with third-party rights (such as the United States) that remained to be resolved, among other items that might arise in litigation (*id.* ¶¶ 19–20).

In June 2011, Rembrandt acquired an exclusive option to purchase the named inventors' rights to the '678 patent and retained the named inventors as consultants. In December 2012, Rembrandt and the named inventors jointly retained Attorneys Steven Kelber and Stewart Baker to provide legal advice regarding ownership of the patent (Golub Decl. ¶¶ 17–18).

In April 2013, Dr. Arbaugh assigned to the NSA all rights in the '678 patent he was obligated to assign to it, and then the NSA, in turn, assigned its rights to Penn. The assignments were made retroactive to the date the '678 patent issued (Arbaugh Decl. ¶¶ 35–36).

In July 2013, the named inventors assigned the '678 patent to Rembrandt in exchange for a right to a portion of any proceeds from litigation. In 2014, Penn conveyed the right to recover for infringement prior to October 2010 to the named inventors (Schroeder Decl., Exhs. 4, 7–8; Scarsi Decl., Exh. 9).

Rembrandt commenced the first of the two now-consolidated actions herein in the Eastern District of Texas in January 2014. In March 2015, after the consolidated cases were transferred here, Apple challenged over eight hundred entries on Rembrandt's privilege log. Rembrandt produced more than two hundred documents on the log after receiving Apple's challenge, but continued to withhold the remaining documents. Apple sent a discovery request to the Court in October 2015 (Dkt. No. 104). The Court ordered Rembrandt to provide a sworn record for each of its assertions of privilege and to make the declarants available for deposition.

1  Rembrandt then produced another set of previously withheld documents.  This motion concerns
2  the 226 entries that remain on Rembrandt's privilege log, unproduced.
3  Apple seeks a ruling on three legal challenges to Rembrandt's privilege assertions and
4  an order compelling Rembrandt to produce withheld documents consistent with that ruling.  To
5  the extent Rembrandt continues to withhold documents, Apple seeks *in camera* review of the
6  remaining documents.
7  In an effort to simplify the discussion of the different sets of disclosures at issue herein,
8  the Court provided the parties with the following chart at the hearing on this matter:



**Figure Used at Hearing**

20  Our dispute concerns disclosures made by Penn and its counsel to the inventors
21  (indicated by the number "1"), and disclosures made by Rembrandt and its counsel to the
22  inventors (indicated by the number "3").  The latter set of disclosures can be further subdivided
23  into disclosures made before Rembrandt acquired an exclusive option to purchase the patent,
24  and disclosures made after Rembrandt acquired that option (referred to as "3A" and "3B,"
25  although not indicated as such on the chart).  (The motion does not seek disclosures indicated
26  by the number "2.")

4

1  Following a brief from Apple and a response from Rembrandt, the Court held oral
2  argument on this matter. At oral argument, the Court asked each side to designate a single
3  privilege log entry from each of period 1, 3A, and 3B, for which Rembrandt then produced the
4  documents for *in camera* review. This was a total of six items (to assist the judge in
5  understanding the nature of the documents at issue).

## ANALYSIS

Apple has not specifically challenged any of the 226 remaining privilege log entries but broadly asserts that Rembrandt has improperly withheld documents in three categories, derived from the chart depicted above. Category 1 includes communications between Penn and its counsel, which Penn disclosed to the named inventors after the '678 patent issued, but before it returned the rights to the patent to the named inventors. Category 3A includes communications between Rembrandt and its counsel that Rembrandt disclosed to the named inventors prior to its acquisition of an exclusive option to purchase the '678 patent. Category 3B includes communications between Rembrandt and its counsel that it disclosed to the named inventors after Rembrandt acquired the exclusive option. Apple did not specifically argue that Rembrandt improperly withheld documents from Category 2 (documents disclosed by the named inventors to Rembrandt), accordingly, this order does not address those documents.[1]

Rembrandt asserts that the documents in Categories 1 and 3B are subject to attorney-client privilege, inasmuch as any disclosures were made pursuant to a common legal interest. Rembrandt further asserts that documents in Categories 1, 3A, and 3B are subject to work-product immunity. Each argument is now addressed.

---

[1] Rembrandt notes that sixty-two of the challenged documents are solely in the named inventors' custody. The subpoenas served on the named inventors identified the place of compliance as New York or Washington, D.C. Pursuant to Rule 37(a)(2), "[a] motion for an order [compelling disclosure or discovery] to a nonparty must be made in the court where the discovery is or will be taken." Pursuant to Rule 45(f), "[w]hen the court where compliance is required did not issue the subpoena it may transfer a motion under this rule to the issuing court if the person subject to a subpoena consents or if the court finds exceptional circumstances." The named inventors are not parties in this action, and Apple has not filed motions in the respective courts of compliance for subpoenas issued to the named inventors. Until such motions are filed and transferred here, this Court lacks jurisdiction to order the named inventors to produce the sixty-two documents in their possession.

5

### 1. ATTORNEY-CLIENT PRIVILEGE AND COMMON LEGAL INTEREST.

"Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citation omitted). Privilege is generally demonstrated by satisfying an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Ibid.* A party asserting a privilege bears the burden of proving each element of the privilege. *Id.* at 607–08. "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* at 607 (citation omitted). A party may make a *prima facie* showing of privilege by submitting a privilege log that identifies:

> (1) the attorney and client involved, (2) the nature of the document, (3) all persons or entities shown on the document to have received or sent the document, (4) all persons or entities known to have been furnished the document or informed of its substance, and (5) the date the document was generated, prepared, or dated.

*In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). Once a party has made a *prima facie* showing that a document is privileged, a party challenging privilege must "show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *Id.* at 1075.

Here, Rembrandt has provided sworn declarations that each document withheld included confidential communication pertaining to the request or provision of legal advice from a lawyer, acting in his or her legal capacity, to his or her client (or the conveyance of legal advice by someone authorized to do so by an attorney), and that the custodian has maintained its confidence. Thus, it is Apple's burden to show a factual basis sufficient to demonstrate that *in camera* inspection may reveal that the materials are not privileged. Apple argues that privilege

6

as to the withheld documents was waived by the disclosure of those documents to the named inventors, and it attempts to do so on a group basis (*i.e.*, for Category 1 and Category 3B), rather than as to any particular documents.

Generally, if a party discloses privileged documents to a third party, that disclosure constitutes a waiver of privilege as to that subject matter. *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010). Our court of appeals has not directly addressed the scope of a common legal interest with regard to transactions between the inventors of a patent and partners or potential partners in business ventures seeking to monetize that patent. Accordingly, this order considers the problem in light of the policy underlying the attorney-client privilege:

> Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Moreover, "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390.

In *Upjohn*, an employer asserted privilege over questionnaires submitted by lower-echelon employees to the employer's counsel for the purpose of gathering information that would form the basis of legal advice for the employer. The questionnaires concerned matters "within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice." *Id.* at 394. Specifically, the questionnaires identified the sender as the general counsel and indicated the legal implications of the underlying investigation. Moreover, the questionnaires were considered "highly confidential" when made and kept confidential by the employer. *Id.* at 395. In light of these facts, the Supreme Court held that the attorney-client privilege applied to the questionnaires.

7

### A. Disclosures by Penn (Category 1).

With regard to Category 1 (communications between Penn and its counsel disclosed to the named inventors), Penn had an interest in monetizing its own patent through litigation or licensing, and the inventors shared Penn's interest in developing those strategies, inasmuch as they had a right to royalties from the patent. Penn's efforts to enforce and license the patent plainly needed to be informed by the named inventors' understanding of the scope of the patent. Similarly, Penn held an interest in ensuring the patent remained strong and valid, which interest also turned on the named inventors' understanding of the patent and the prior art. Indeed, the named inventors remained obligated to cooperate with Penn in any proceedings before the PTO with regard to the patent. Finally, Penn had an interest in ensuring it had full title to the patent, so it would have standing to enforce it, which required discussions with the named inventors about their respective duties to assign their patent rights to the government and the procedures for recovering those rights.

Given their rights to royalties from the patent, and their interest as possible assignees of the patent, the named inventors shared Penn's interest in engaging in "full and frank" discussions with Penn's counsel about legal questions involved in licensing and enforcement opportunities, perfecting title in the patent, and defending the patent's validity. Moreover, recognizing privilege in these circumstances serves the purpose of the "giving of information to [Penn's] lawyer to enable [her] to give sound and informed advice" with regard to the parties' joint interests in the patent. *Ibid.*

The decision in *Research Institute for Medicine and Chemistry, Inc. v. Wisconsin Alumni Research Foundation*, 114 F.R.D. 672, 678 (W.D. Wisc. 1987) ("*RIMC*"), reached the same conclusion. That decision held that because "the inventors share proportionately with [the patent owner] in the fruits of the patents it is clear that in the performance of the agreement a community of interest exists." Apple contends that our named inventors lacked the continuing obligation to cooperate with the named inventors contemplated in *RIMC*, but Penn's patent

1  policy obligated the named inventors to "cooperate fully with the University in the preparation
2  and prosecution of patents," which would include post-issue procedures before the PTO
3  (Donohue Decl., Exh A).

4  Apple argues that the named inventors and Penn shared only *commercial* interests in
5  generating revenue; however, Penn and the named inventors' joint interest in generating
6  revenue through licensing and litigation and maintaining the strength and validity of the patent
7  inherently relied on the joint pursuit of *legal* objectives. Rembrandt has made a sufficient
8  showing that the withheld documents pertained to these legal interests, and Apple has failed to
9  refute Rembrandt's case.

10  Apple further contends that Rembrandt has failed to carry its burden to justify privilege,
11  inasmuch as many of the privilege logs did not include any attorneys as senders or recipients of
12  the documents in question, but instead indicated the documents reflected legal advice "from
13  Penn attorney(s)," conveyed by non-legal employees at Penn. Apple cites the fact that Attorney
14  Kathryn A. Donohue, counsel for Penn, could not recall which specific attorney provided the
15  advice in question for each document at her deposition, but Apple never gave Attorney
16  Donohue the opportunity to review individual documents during her deposition. Attorney
17  Donohue cannot be faulted for lacking comprehensive memory as to dozens of documents.
18  This order holds that Rembrandt has made a sufficient *prima facie* showing that the withheld
19  documents in Category 1 are subject to attorney-client privilege, and Apple has failed to
20  overcome Rembrandt's case.[2]

21  Although this order finds that disclosure to the inventors — in and of itself — was not a
22  waiver of that privilege, a further problem concerns whether adequate steps occurred to protect
23  the confidentiality of the records in the hands of the inventors. When evaluating whether an

---

[2] The better procedure would have been for the deponent to have the withheld materials before her so that she could have named names and dates (even though the materials would not have been shown to examining counsel). The Court would have ordered this procedure had Apple requested it, and Rembrandt notes that Apple adopted this procedure in subsequent depositions.

attorney-client privilege attached, we should check to see if the parties treated it as such, for example by marking the communications "privileged" and storing them in a special file, by entering into an agreement to maintain the confidentiality of the documents, and/or by avoiding disclosure to yet further parties. Here, the record is not developed well enough to answer this question, although the two documents submitted for *in camera* review from Category 1 lacked any "privileged" or "confidential" marking. This question might well have to be litigated inventor by inventor and maybe even document by document. Apple has chosen to rest its challenge on the omnibus absence of a common legal interest. Now that this challenge has been rejected, the Court finds that the record is too underdeveloped to allow a blanket determination, as Apple seeks, to sweep away the privilege on the other grounds. In light of our new emphasis on "proportionality," the Court doubts that any such exercise would be worthwhile.

In any case, the named inventors averred that they understood the nature of their communications with Penn to be confidential and privileged pursuant to their common interests (Arbaugh Decl. ¶ 10; Keromytis Decl. ¶ 19). Furthermore, the privilege log indicates that the named inventors maintained the confidentiality of the documents in question.

Accordingly, Apple's motion to compel the production of the documents from Category 1 that Rembrandt withheld as privileged is **DENIED**.

### B. Disclosures by Rembrandt (Category 3B).

Rembrandt asserts attorney-client privilege as to Category 3B, disclosures made to the named inventors after it acquired an exclusive option to purchase the patent. It does *not* assert attorney-client privilege as to Category 3A, the disclosures made before it acquired that option (it only asserts work-product immunity as to those disclosures).

Rembrandt argues that after it acquired the exclusive option to purchase the patent, its disclosures to the named inventors occurred pursuant to a common interest, namely, conducting due diligence, perfecting title in the patent, identifying targets for litigation, and developing specific legal strategies. At this point, the named inventors and Rembrandt had ceased dealing

at arms length, and they had taken the first formal step towards effecting a joint litigation strategy. Rembrandt and the named inventors, then, had a joint need to engage in "full and frank" discussions with counsel about the legal issues that informed the pursuit of their obligations.

*In re Regents of the University of California*, 101 F.3d 1386, 1390 (Fed. Cir. 1996), is instructive with regard to this category of disclosures. That decision held that a company with an exclusive option to purchase a pending patent did not waive attorney-client privilege by disclosing legal advice to the inventor because the parties had "allied in a common legal cause" — patent prosecution at the PTO — and "[b]oth parties had the same interest in obtaining strong and enforceable patents." Here, Rembrandt acquired the same interest in the '678 patent — an exclusive option to purchase — and shared the inventors' interest in pursuing joint litigation, preserving the validity of the patent, and perfecting title in the patent.

Apple relies on *Thought, Inc. v. Oracle Corp.*, No 12-5601, 2014 WL 3940294, at *3 (N.D. Cal. Aug. 11, 2014) (Judge Maria-Elena James), which held that a non-practicing entity waived privilege by disclosing "patent background investigations or evaluations" to a patent owner during a due diligence period as part of a tentative assignment agreement, because the parties had not engaged in a joint *legal* enterprise:

> Further, even if some of the [non-practicing entity] communications are privileged, the dominant interests between Thought and the [non-practicing entities] were deciding whether to become business partners in monetizing the patent portfolio. As the negotiations were not made *in an effort to formulate a joint defense*, this is a non-privileged business decision. This is true even if the correspondence had potential relevance to a hypothetical litigation — such interest is secondary to the immediate business decision of whether to purchase the patents. The interests of the parties were thus commercial and not eligible for common-interest privilege.

*Ibid.* (internal citations omitted) (emphasis added).

*Thought* is distinguishable because it involved disclosures that solely served the interest of "evaluating patents to acquire and targets to assert those patents against[,]" which is clearly a

11

"business" function. *Ibid.* The reasoning of *Thought* applies to the disclosures in Category 3A, discussed below, but it does not apply to Category 3B, which includes disclosures made pursuant to a joint enterprise that Rembrandt had already formalized with the objective of perfecting title in the patent and engaging in a joint litigation strategy, well beyond merely evaluating a patent to acquire.

The undersigned judge has previously held that a "common interest" or "joint defense" exception (to waiver) applies as follows:

> [An exception to the waiver of privilege] applies where parties are represented by separate counsel but engage in a common legal enterprise. The interests of the parties involved in a common defense need not be identical, and, indeed may even be adverse in some respects. The joint-defense exception, however, protects *only* those communications that are part of an on-going and joint effort to set up a common defense strategy.

*Holmes v. Collection Bureau of Am., Ltd.*, No. 09-02540, 2010 WL 143484, at *3 (N.D. Cal. Jan. 8, 2010). Here, once Rembrandt had acquired an exclusive option to purchase the patent, it was already "engage[d] in a common legal enterprise" with the named inventors and communications between them were "part of an on-going and joint effort to set up a common . . . strategy" for perfecting title in the patent and enforcing it through litigation.

Indeed, the documents submitted for *in camera* review from Category 3B support the conclusion that once Rembrandt acquired the option to purchase the patent, the parties' interests aligned and they began to pursue joint legal interests. The extension of the attorney-client privilege to disclosures in furtherance of that interest plainly serves the goal of *Upjohn* to enable "full and frank" discussion with attorneys and ensuring attorneys can collect the information they need to provide accurate legal advice.

Accordingly, Apple's motion to compel the production of documents in Category 3B is **DENIED**.

### 2. WORK-PRODUCT IMMUNITY (CATEGORY 3A).

To the extent attorney-client privilege does not apply, Rembrandt contends its disclosures were also protected by attorney work-product immunity and that any disclosure to the named inventors occurred pursuant to a common legal interest. Because this order has already held that attorney-client privilege applies to disclosures in Category 1 and Category 3B, it only considers work-product immunity as to Category 3A.

Pursuant to Rule 26(b)(3), attorney work product "prepared in anticipation of litigation or for trial by or for another party or its representative" is subject to a qualified privilege. The Advisory Committee Note on Rule 26 further clarifies that "[m]aterials assembled in the ordinary course of business . . . or for other nonlitigation purposes are not" entitled to work-product immunity. For so-called "dual purpose" documents created both in anticipation of litigation and for non-litigation purposes, a document is eligible for work-product immunity if "in light of the nature of the document and the factual situation in the particular case, 'the document can be fairly said to have been prepared or obtained because of the prospect of litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]'" *In re Grand Jury Subpoena (Mark Torf/Torf Environmental Management)*, 357 F.3d 900, 908 (9th Cir. 2003) (quoting *United States v. Adlman*, 134 F.3d 1194, 1195 (2d. Cir. 1998)).

This order assumes, for the sake of argument, that each of the documents in Category 3A constituted work product created "because of" the prospect of litigation. Even under this assumption, however, Rembrandt's assertion of work-product immunity fails, inasmuch as it waived that protection by disclosing the documents to the named inventors before they shared a common legal interest.

As with attorney-client privilege, work-product immunity may be waived upon disclosure to a third party "who is not bound by the privilege." *Bittaker v. Woodford*, 331 F.3d 715, 719, 722 n.6 (9th Cir. 2003) (noting its holding applied equally to attorney-client

13

privilege and work-product immunity). Before Rembrandt acquired an exclusive option to purchase the patent, it lacked a common legal interest with the named inventors. At that point, Rembrandt's interest was in pitching the value of a business partnership to the named inventors and possibly in highlighting concerns about invalidity and title in order to drive down the price. Any discussion of litigation at that stage remained hypothetical and incidental to the arms length evaluation of the prospect of a business relationship. As in *Thought*, 2014 WL 3940294, at *3, "[t]he interests of the parties were thus commercial and not eligible for common-interest privilege."

Rembrandt argues that its disclosure of documents to the named inventors during the time period represented by Category 3A did not constitute a waiver because the named inventors had verbally agreed to a non-disclosure agreement with regard to those disclosures. The presence of a non-disclosure agreement covering these disclosures weighs in favor of finding a common legal interest, but it is not conclusive. Rembrandt may not extend the scope of work-product immunity by asserting that a common legal interest existed according to a contract where one does not otherwise exist under the law. Here, insufficient common legal interest existed and considerable adversity existed, so Rembrandt waived any work-product immunity as to Category 3A by disclosing documents in that category to the named inventors.

The documents submitted for *in camera* review from Category 3A support this conclusion. The document selected by Apple was a presentation to the named inventors about the *business case* for entering into a joint venture for the '678 patent, although the business opportunities contemplated arose from Rembrandt's analysis of the patent and broad identification of litigation targets. The document selected by Rembrandt included one named inventor's reaction to Rembrandt's potential litigation targets. Both documents demonstrate that the communications between Rembrandt and the named inventors during the period covered by Category 3A focused on exploring a business relationship, albeit one that might ultimately require the joint pursuit of legal advice. Apple's motion to compel the production of

14

documents disclosed to the inventors before Rembrandt acquired an exclusive option to purchase the '678 patent is therefore **GRANTED**.

## CONCLUSION

For the reasons stated above, Apple's motion to compel is **GRANTED IN PART** and **DENIED IN PART**. Rembrandt must produce the withheld documents from Category 3A that are in its custody by **FEBRUARY 17**.

To be clear, at trial, the full extent of the business deal involving the inventors will surely be fully explored (in order to test the full extent of the inventors' bias). The Court in no way blesses the withholding of such documents and understands they already have been produced.

**IT IS SO ORDERED.**

Dated:   February 4, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

15